FREIGHT TERMINALS, INC., Plaintiff-Appellee,

v.

RYDER SYSTEM, INC., Defendant-Appellant-Cross Appellee.

RYDER TRUCK LINES, INC., Defendant-Appellant,

v.

MERCURY FREIGHT LINES, INC., Third Party Defendant-Appellee-Cross Appellant.

No. 71-3056.

United States Court of Appeals, Fifth Circuit.

June 7, 1972.

Robert J. King, W. Robert Brown, Houston, Tex., for Ryder System, Inc.; Liddell, Sapp, Zivley & Brown, Houston, Tex., of counsel.

Charles R. Gregg, Thomas N. Crowell, Hutcheson, Taliaferro & Grundy, Houston, Tex., for Ryder Truck Lines, Inc.

Royce R. Till, Arno W. Krebs, Jr., Russel H. McMains, Fulbright, Crooker & Jaworski, Houston, Tex., for Mercury Freight Lines, Inc.

William M. Schultz, Albert S. Weycer, Schultz & De Ybarrondo, and Ladin & Weycer, Houston, Tex., for Freight Terminals, Inc.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

In this Texas diversity case Freight Terminals, Inc., as lessor, brought an action for physical damage to its truck terminal facilities against Ryder System Inc. and Ryder Truck Lines, Inc., as lessee, who in turn joined Mercury Freight Lines, Inc. as a third party defendant. A jury found the defendants liable for allowing the property to deteriorate in breach of their obligations under the lease and sublease. We affirm.

In 1950 Freight Terminals, Inc., as lessor, entered into a fifteen year lease agreement with T.S.C. Motor Freight Lines, Inc., as lessee. Freight Terminals had constructed a freight terminal building and yard in contemplation of the lease. With respect to the upkeep of the premises the pertinent parts of the lease provided:

### VI.

The Lessor covenants and agrees at its own cost and expense to keep in good condition and repair during the demised term, the roof of the demised premises, exterior walls, and to make such repairs as may be required by inherent structural defects, except those necessitated by the acts of the Lessee.

\* \* \* \* \* \*

### VIII.

\* \* \* \* \* \*

Lessee further agrees to suffer no waste upon said premises and shall, at its own expense and costs, keep them in as good repair and condition as when received, including all plumbing, air-conditioning and heating equipment, and shall, at the expiration of this lease, and in whatever manner its termination may be brought about, deliver said premises to Lessor in as good order and condition as they were immediately upon the erection and construction of said building, ordinary wear and tear, and damage by fire, Acts of God and windstorm, alone excepted. . . .

\* \* \* \* \* \*

### XIV.

Lessee shall pay and discharge all costs and expenses, including reasonable attorneys' fees, that shall arise from or in connection with enforcing the covenants and agreements of this lease by Lessor, and all of the covenants and agreements herein de-

scribed shall extend to and be obligatory upon the successors, assigns or heirs of either and all the parties hereto, it being understood and argeed that the Lessor may at any time assign this lease and all its rights hereunder.

\*　　\*　　\*　　\*　　\*　　\*

In 1959 Ryder System, Inc. (System) acquired all of the capital stock of T.S.C., changed the name of T.S.C. to Ryder Truck Lines, Inc. (Truck) and guaranteed the performance of all the lease obligations. Truck continued to utilize the facilities in the operation of its motor freight business until July, 1962.

Prior to Truck's vacating the premises, Freight Terminals became concerned about the condition of the freight yard and the air conditioning system. In early 1961 Freight Terminals learned that bulldozers were scraping and removing the yard's asphalt surface. Later when Freight Terminals became aware of Truck's abandonment of the facilities their concern for the maintenance of the premises increased. The property was located in an area of Houston where vandalism was rampant and unoccupied buildings were more susceptible to ravishment by vandals.

Ladin, president of Freight Terminals, made a physical inspection of the premises in November, 1962. He found the facilities in a deplorable condition.

There were broken windows, holes and cracks in the building, loading docks were damaged, most of the electrical system was ripped out or not working, commodes were torn out and the air conditioning system was not operating properly.

In June, 1963, System employed Evans to repair the facilities. Evans found the property in great disrepair when he commenced his renovations. The air conditioning system was repaired, the electrical system restored, doors were fixed and holes in the yard were filled —all for a total cost of approximately $10,000. Evans had estimated that a new asphalt yard surface would cost $9,500; however, System instructed him to simply fill the holes. Evans could have made further necessary repairs to the facilities but in fact did not. During the work Evans had to keep a man physically on the scene at all times because of the continuous threat of vandalism.

After the repairs were made in June the premises again remained vacant until November, 1963 when Mercury Fregiht Lines sub-leased the facilities from System at a reduced rent.[1] Mercury's operation was much smaller than Truck's. Only a portion of the yard and building were utilized. Mercury occupied the terminal facilities until the lease expired in December, 1965.

---

1.
                    November 4, 1963
Mr. Clarence Levi
President
Mercury Freight Lines, Inc.
Post Office Box 1624
Mobile, Alabama
　re: 400 Pickney Street Terminal
　　　Houston, Texas
Dear Mr. Levi:
　　\*　　\*　　\*　　\*　　\*

It is understood and agreed that Mercury Freight Lines, Inc., will, commencing November 15, 1963, assume the position of "Lessee" in the enclosed Lease agreement . . . . .

You have inspected the property recently, and it is understood that you are taking the premises except as we discussed regarding the wiring "as is" and will return it at the end of the under-

lying main lease in a satisfactory condition pursuant to the terms of such main lease.

If the above sets forth our complete understanding, please sign and return to me a copy of this letter,
　　\*　　\*　　\*　　\*　　\*

Sincerely,
Ryder System, Inc.

By: /s/ *Arthur S. Bernstein*
　　　Arthur S. Bernstein
　　　Vice President and
　　　Treasurer
Approved and Accepted by
Mercury Freight Lines, Inc.

By: /s/ *Clarence Levi*
　　　Clarence Levi
　　　President
　　　11-21-63

In February 1965 System and International Utilities Corporation entered into a stock purchase agreement under which International acquired all of System's stock in Truck. In the agreement System represented to International that Truck had complied with the provisions of all outstanding leases [2] and warranted that there was no litigation, proceeding or investigation pending or threatened which could result in any material or adverse change in the business prospects of Truck.[3] System agreed to indemnify International for any inaccuracy or breach of the representations made in the stock purchase agreement.[4]

At the expiration of the lease Freight Terminals again inspected the property and found the doors damaged, windows broken and holes in the building. The interior of the building was not inspected at that time. In March, 1966 pictures were taken which reflected that the condition of the premises was the same as it had been in December, 1965.

Freight Terminals hired Thompson in the spring of 1966 to provide it with a cost estimate of the reparations necessary to restore the facilities to a usable condition. Thompson enumerated all of the damage he found and estimated the cost would be $36,000 to repair and refurbish the building and $36,000 to restore the surface of the yard.

Suit was filed by Freight Terminals in state court in June, 1966 against System and Truck to recover damages as a result of their breach of the lease. System, a Florida corporation with no place of business or agent in the state, was served with process by service upon the Secretary of State pursuant to the Texas long arm statute.[5] Immediately upon removal System moved to dismiss on the ground that the allegations in the complaint were insufficient to support proper service under art. 2031b.

Truck brought Mercury in as a third party defendant. The district court granted Freight Terminals leave to amend its complaint to correct the pleading error complained of by System in its motion to dismiss. The motion to dismiss was then denied.

In answers to special interrogatories at the conclusion of the trial the jury found that both Truck and Mercury breached the condition in the lease in that the premises were damaged beyond ordinary wear and tear and the excepted

2. (k) Neither the Ryder Trucking Group nor Hoover have any existing material leases, contracts, commitments or powers of attorney whose duration extends beyond July 31, 1965 except as summarized in Schedule B hereto, and have complied with all of the provisions of such instruments and of all other contracts and commitments to which they are parties and are not in default under any thereof. All such leases, contracts, commitments, and powers of attorney have been made in the ordinary course of business and are of a character, type and amount normal and usual in the ordinary course of business.

3. (m) Except for suits or claims of a character incident to the normal conduct of the business of Ryder Trucking Group and of a type, character, and amount normal and usual in the ordinary course of business, there is no litigation, proceeding or investigation pending or threatened which could result in any material adverse change in the business or prospects or condition (financial or otherwise) of the Ryder Trucking Group or in any of their properties or assets or which questions the validity of any action taken pursuant to or in connection with the provisions of this Agreement, nor does Seller know or have any reasonable ground to know of any basis for such litigation, proceedings or investigation.

4. (r) *  *  *  *  *
The foregoing representations and warranties shall survive Closing hereunder and Seller agrees to indemnify and hold harmless Purchaser against any inaccuracy in or breach thereof. Seller shall have the right to direct any proceedings, legal or otherwise, relating to any such matters, will assume any and all costs relating thereto and will have the right to retain counsel of its choice in connection therewith. Purchaser agrees to, and to cause Ryder Trucking Group to, cooperate with Seller in any such proceedings in any way Seller may reasonably request which shall not involve cost to Purchaser or the Ryder Trucking Group.

5. Tex.Civ.Stat.Ann. art. 2031b (1964).

obligations of the lessor.[6] They apportioned the amount of damages between Truck and Mercury [7] and awarded attorneys' fees to Freight Terminals.

System and Truck were held jointly and severally liable for all damages and attorneys' fees. Truck was granted indemnity against System for all amounts owing to Freight Terminals, together with reimbursement to Truck for its attorneys' fees. Mercury was required to indemnify System for the damages which occurred during its occupancy and for a proportionate share of Freight Terminals' attorneys' fees.

The following specifications of error are raised on this appeal: (1) System contends that the court erred in denying its motion to dismiss on jurisdictional grounds; (2) System, Truck and Mercury argue that the evidence is insufficient as a matter of law to support special interrogatories 4 and 6; (3) System, Truck and Mercury assert that the jury's verdict with respect to apportioning the amounts of damages between Truck and Mercury amounted to a compromise or quotient verdict; (4) System and Truck claim that the court erred in finding the sub-lease with Mercury ambiguous and insufficient to impose liability on Mercury for all damages under the sub-lease agreement; (5) System argues that the court erred in determining that under the stock purchase agreement it was required to indemnify Truck for all damages found in favor of Freight Terminals and further that System was liable for Truck's attorneys' fees; and (6) Mercury contends that it was not liable contractually or otherwise to Freight Terminals for attorneys' fees.

6. 1. Do you find from a preponderance of the evidence that, apart from ordinary wear and tear, damage occurred to the premises of Freight Terminals, Inc. during their use and occupancy as a motor freight terminal by one or more of the defendants? Answer: Yes.

2. Do you find from a preponderance of the evidence that such damage as you have found in answer to question no. 1 was the result of Defendants' violation or breach of the lease agreement with the Plaintiff to return the premises to lessor in as good repair and condition as when received, ordinary wear and tear and the obligations of the lessor, Freight Terminals as to the roof, exterior walls and structural defects under the lease excepted? Answer: Yes.

3. Do you find from a preponderance of the evidence that all or part of the damage to the premises which you have found in answer to question No. 2 resulted from the occupancy by one or more of the Defendants up to and including November 15, 1963? Answer: Yes.

5. Do you find from a preponderance of the evidence that all or part of the damage to the premises which you have found in answer to question no. 2 resulted from the occupancy by one or more of the Defendants between November 15, 1963 and December 31, 1965? Answer: Yes.

7. With respect to Truck the jury assessed damages as follows:

4. If you have answered question no. 3 yes and only in that event then answer the following:
(a) What amount of damage in dollars and cents resulted to the yard and parking area from such occupancy? Answer: $23,500.
(b) What amount of damages in dollars and cents resulted to the air-conditioning system from such occupancy? Answer: $1,114.
(c) What amount of damage in dollars and cents resulted to the terminal building from such occupancy? Answer: $20,490.
(d) What is the total of such damages? Answer: $45,104.

With respect to Mercury the jury assessed damages as follows:

6. If you have answered question no. 5 yes, and only in that event, then answer the following:
(a) What amount of damage in dollars and cents resulted to the yard and parking areas from such occupancy? Answer: $3,900.
(b) What amount of damage in dollars and cents resulted to the air-conditioning system from such occupancy? Answer: $186.
(c) What amount of damage in dollars and cents resulted to the terminal building from such occupancy? Answer: $3,400.
(d) What is the total amount of such damages? Answer: $7,486.

**1052**

## Motion to Dismiss

■ Immediately upon removal of the case to the district court System filed a motion to dismiss on the grounds that Freight Terminals' allegations failed to allege that System "does not maintain a place of regular business in this State or a designated agent upon whom service may. be made." Tex.Civ. Stat.Ann. art. 2031b (1964). Texas strictly construes its long arm statute. Jurisdiction is not conferred unless the complaint alleges all of the jurisdictional facts set out in the statute. McKanna v. Edgar, Tex.1965, 388 S.W.2d 927; Woodcock, Cummings, Taylor & French, Inc. v. Crosswell, 468 S.W.2d 864, 866 (Tex.Civ.App.—Houston, 1st Dist.1971, no writ); *compare*, Eyerly Aircraft Co. v. Killian, 5 Cir. 1969, 414 F.2d 591, 602–604. Subsequently on motion, the trial court granted Freight Terminals leave to amend its complaint to allege the necessary jurisdictional facts. System argues that its motion to dismiss should nevertheless have been granted because the court had not acquired jurisdiction over System and could not obtain it by permitting Freight Terminals to amend. It contends, relying on Block v. Block, 7 Cir. 1952, 196 F.2d 930, that once it is determined that there was no jurisdiction in the state court from which the action was removed, the district court must dismiss upon a motion timely made. We regard *Block* as inapposite here. In that case there was no attempt to have the defendant served. Consequently, the motion to dismiss was granted.

■ Although the district court must look to state law to ascertain whether service was properly made prior to removal, this does not foreclose service being effected in the district court. 28 U.S.C.A. § 1448.[8] See 4 Wright and Miller, Federal Practice and Procedure § 1082 (1969). System had notice of the suit and does not claim to have been prejudiced by Freight Terminals' failure to allege the Texas statutory requirements. It would have served no useful purpose for the district court to have dismissed the action as to System only to have Freight Terminals refile the suit with the necessary allegations. *See* Beecher v. Wallace, 9 Cir. 1967, 381 F.2d 372, 373; Barnes v. Irving Trust Co., S.D.Tex.1968, 290 F.Supp. 116, 117.

## Sufficiency of the Evidence

All three appellants argue that the evidence was insufficient to show the amount of damage for which Truck was responsible and the amount of damage attributable to Mercury. In addition to the insufficiency of evidence upon which the jury could reasonably apportion the damages, appellants also argue that Freight Terminals' (Thompson's) cost of repair estimate was insufficient as a basis upon which to find damages because it was made several months after the expiration date of the lease and because it was a total and not an item by item estimate.

The appellants have not attacked any of the jury findings that there was some damage for which they were liable. The controversy is with respect to the amount of such damage and who is liable for it. Three categories of damages were enumerated in the special interrogatories—the yard, the air conditioning system and the terminal building.

■ An estimate was made by Thompson based upon the cost of repair to the yard to put it in a usable condition. The fact that the estimate was made several months after the termination of the lease does not invalidate it. As we have previously noted, Ladin in-

8. 28 U.S.C.A. § 1448

In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

\*　　\*　　\*　　\*　　\*

spected the facilities in December, 1965 when the lease terminated. Pictures were taken of the premises in the spring of 1966 about the time Thompson made his estimate. Ladin confirmed that the pictures portrayed the premises as they were in December, 1965. This manner of assessing damages may not be as strong as an estimate made immediately after the premises are vacated by the lessee but it is sufficient and was properly considered by the jury.

■■ We are also unimpressed with the argument that since the estimate by Thompson was not specified item by item it was insufficient. Mechanical and mathematical precision are not required to show the cost of repairs. The law only requires that the evidence be sufficient to enable the jury to estimate the loss or damages with reasonable certainty. See Daniels Towing Service, Inc. v. Nat Harrison Associates, Inc., 5 Cir. 1970, 432 F.2d 103, 105–106; Household Goods Carriers' Bureau v. Terrell, 5 Cir. 1969, 417 F.2d 47, 53; *Accord,* Bildon Farms, Inc. v. Ward County Water Improvement District No. 2, Tex.1967, 415 S.W.2d 890; Donaldson v. Liberty Sign Co., 425 S.W.2d 901 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e.).

■ The contention of appellants that there was insufficient evidence upon which the jury could reasonably apportion damages gives us little pause. When considering the sufficiency of the evidence we accept the evidence in favor of the verdict as true and give to that evidence the benefit of all permissible inferences that help sustain the jury's verdict. Stockton v. Altman, 5 Cir. 1970, 432 F.2d 946, 950; cf. Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365, 374–375. Upon review of the record we conclude that the evidence was sufficient to support the jury's findings.

### Compromise or Quotient Verdict

■ The lease was for a term of fifteen years. Truck was in possession about 154 months and Mercury was in possession about 25 months or a ratio of 6 to 1. Each item of damage assessed by the jury against Truck and Mercury has the same ratio to one another, i. e., 6 to 1. It is argued that this phenomenon, when coupled with the lack of evidentiary support for the amount of damages awarded, proves that damages were apportioned according to the length of occupancy of Truck and Mercury. This, it is contended, amounts to a compromise or quotient verdict.

■ A quotient verdict is a chance verdict, that is, no juror knows what the verdict will be when he submits his vote on damages because the final amount is calculated by a pre-agreed formula. North Texas Producers Ass'n v. Jenkins, 342 S.W.2d 192, 195 (Tex.Civ.App.—Amarillo 1960, writ ref'd n. r. e.) The formula has historically taken the form of an averaged verdict. Each juror submits a figure and the foreman adds them and divides by twelve. Handley v. Leigh, 1852, 8 Tex. 129.

■ However, the mere use of a formula is not prohibited. In order to find jury misconduct there must be a preagreement by the jurors to abide by the results of the formula before it is actually computed. Texglass, Inc. v. Suhovy, 380 S.W.2d 904, 905–906 (Tex. Civ.App.—Fort Worth 1964, writ ref'd n. r. e.); North Texas Producers Ass'n v. Jenkins, *supra.* There is no evidence of any such agreement by the jury in this case.

■ A compromise verdict is one where it is obvious that the jury compromised the issue of liability by awarding inadequate damages. National Fire Ins. Co. of Hartford v. Great Lakes Warehouse Corp., 7 Cir. 1958, 261 F.2d 35, 37–38. In a property damage suit, where the damages are virtually liquidated but the jury, nevertheless, awards a much smaller amount, the court may find inadequate damages. National Fire Ins. Co. of Hartford v. Great Lakes

Warehouse Corp., *supra*. But this circumstance was not shown to exist *sub judice*.

### The Sub Lease Agreement

■ System and Truck assert that the sublease should be construed to mean that Mercury accepted the property "as is" in 1963 and contracted to return it in the same condition Truck (T.S.C.), not Mercury, received it in 1950. Accordingly, it is argued that Mercury obligated itself to bear the expense of any damage for which Truck would otherwise be responsible during its occupancy. Mercury counters that the agreement is ambiguous because this is obviously not what the parties had in mind. It interprets the sublease as meaning that it is responsible for returning the property at the end of the lease in the same condition in which it was received in 1963. The district court agreed with Mercury and limited its liability to the amount of damage which occurred during its occupancy.

We are in complete agreement with the district court's clear analysis and disposition of this issue. Freight Terminals, Inc. v. Ryder System, Inc., S.D. Tex.1971, 326 F.Supp. 881, 887–890.

### The Stock Purchase Agreement

When System sold its interest in Truck to International in February, 1965, it represented that Truck was in compliance with all of its lease obligations and that it had no knowledge of any facts that might serve as the basis for litigation other than those in the usual and normal course of business.[9] It further agreed that these representations would survive the closing of the agreement and that it would indemnify International for any breach thereof.[10]

■ In March, 1970, International assigned all of its rights under the stock purchase agreement to Truck. The district court found that System breached its representations in that Truck was not in compliance with the terms of the lease with Freight Terminals and that System knew of this breach.

We find no record support for System's argument that it had no knowledge that there were damages to the terminal facilities when the agreement was made in 1965. System admits that complaints about the condition of the yard were received prior to the signing of the agreement, and it was established that System knew that the repairs made by Evans did not fully restore the premises to their original condition less ordinary wear and tear.

System contends that even if it knew of the facts underlying the litigation at the time it entered into the agreement, the damages arose in the normal course of business and were expressly excepted from any warranties or representations made in the agreement. The district court properly held to the contrary.

■ System further argues that it should not be liable under the agreement for any damages to the building or yard which occurred after the date of the agreement. Mercury was in possession of the premises at the time the agreement was executed and remained in possession until the lease expired. Although System was held liable to Freight Terminals for all damages and attorneys' fees under the lease, System is entitled to indemnification from Mercury for all damages that occurred during Mercury's occupancy and its proportionate amount of attorneys' fees.

■ Under the agreement System assumed any and all costs relating to

---

9. See Notes, 2, 3 *supra*.

10. See note 4 *supra*.

any breaches of its representations. Truck's attorneys' fees are part of the costs involved resulting from System's breach of its representations. They were therefore properly considered and made part of the judgment. *See* Fisher Const. Co. v. Riggs, 320 S.W.2d 200 (Tex.Civ.App.—Houston 1959) rev'd on other grounds, 160 Tex. 23, 325 S.W.2d 126; B & G Electric Co. v. G. E. Bass & Co., Inc., 5 Cir. 1958, 252 F.2d 698, 700–701, cert. denied, 1958, 357 U.S. 931, 78 S.Ct. 1372, 2 L.Ed.2d 1371.

Mercury's Liability for Attorneys' Fees

█ Mercury assigns error in the district court's finding that it is liable for attorneys' fees to Freight Terminals. It reasons that there is no contractual basis for such an award because the district court found that the sublease agreement did not contain sufficient language to incorporate the original lease by reference. We agree that the district court found, and properly so, that liability under the original lease for all damages that occurred during the full term of the lease was not sufficiently incorporated into the sublease. The district court did not hold, however, that other obligations under the original lease could not be or were not incorporated into the sublease. Liability on Mercury's part for Truck's negligence and damage to the property was not incorporated into the sublease because that was not the intent of the parties. The court below found that "the only clear meaning that can be ascertained from the evidence presented in this case is that the parties intended that Mercury would assume the obligations of the 'repair' covenant from November 15, 1963, to the end of the lease period." The court necessarily also concluded, and we think properly, that the parties intended to incorporate the obligation to pay attorneys' fees in connection with enforcing the repair covenant.

The judgment is affirmed.