

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-30-2001

# Pryer v. Slavic

Precedential or Non-Precedential:

Docket 00-3297

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Pryer v. Slavic" (2001). *2001 Decisions.* Paper 117.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/117

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 30, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3297

RAYMOND T. PRYER

v.

C.O. 3 SLAVIC; C.O. 1 COOK;
C.O. 1 PROROCK; C.O. 1 D. BURSEY,

      Appellants

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 92-1461)
District Court Judge: The Honorable Gary L. Lancaster

Argued: October 26, 2000

Before: MANSMANN, ALITO, and FUENTES, Cir cuit Judges

(Opinion Filed: May 30, 2001)

        D. Michael Fisher
        Calvin R. Koons
        John G. Knorr, III (argued)
        Office of Attorney General
        Appellate Litigation Section
        15th Floor, Strawberry Square
        Harrisburg, PA 17120

       ATTORNEYS FOR APPELLANTS

```
        Jere Krakoff
        1705 Allegheny Building
        429 Forbes Avenue
        Pittsburgh, PA 15219

        Cathy Bissoon (argued)
        Reed, Smith, Shaw & McClay, LLP
        435 Sixth Avenue
        Pittsburgh, PA 15219

         ATTORNEYS FOR APPELLEE
```

OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellee, Raymond T. Pryer, a state prisoner, filed a civil rights action against a number of prison guar ds claiming that they had assaulted him in two separate incidents. A jury found that some of the guards had acted r easonably but found four others liable and awarded Pryer $1.00 in damages. Thereafter, the District Court, on its own motion, ordered a new trial, limiting its scope solely to the issue of damages. In the retrial, the court prevented the defendants from arguing that some of the guar ds no longer in the case had caused Pryer's injuries. In that second trial, the jury awarded Pryer $300,000. The guards appeal the District Court's rulings pertaining to the second trial.

We will affirm the District Court's order for a new trial. However, because the issues of liability and damages were so intertwined as to make a fair trial on damages alone impossible, we will reverse and remand for a new trial on all issues.

I.

Pryer brought this action under 42 U.S.C. S 1983 alleging that he was subjected to excessive use of for ce on September 15 and 27, 1990, while imprisoned at the State Correctional Institution at Pittsburgh. In his complaint, Pryer named approximately forty defendants, including prison officials, medical personnel, and numer ous

correctional officers. Pryer sought compensatory and punitive damages for his injuries. The District Court dismissed the claims against the prison officials and the medical personnel, and the case proceeded to trial against nineteen guards: Gary Beck, Fred Bogonovich, Richard Bedilion, Douglas Cameron, Daniel Primm, Jacob Tokarski, Paul Trunick, Daniel Clarke, Robert Jefferson, Perry Ciesielski, Bernard Jacobs, William Balzer, John Weaver, Daniel Caponi, Richard Slavec,[1] David Cook, Gerald Prorock, Doyle Bursey, and Russell Wilson. Pryer appeared pro se in the three-day trial, which concerned both incidents and began February 22, 1999.

A.

The relevant facts established at trial are as follows. On September 15, 1990, the day of the first incident, Pryer was in the prison exercise yard when he began arguing and fighting with another inmate. Prison guards broke up the fight and handcuffed Pryer, then transferred him to the Restricted Housing Unit ("RHU") where he was placed in the custody of Officers Balzer, Caponi, Weaver, Bogonovich, and Beck.

According to Pryer, these officers began beating him in the hallway near the RHU while admitting him to the cellblock. Pryer testified that, without provocation and while in handcuffs, these five officers punched him with fists, struck him with nightsticks, kicked him repeatedly while he was lying on the ground, and eventually knocked him unconscious. Further, Pryer testified that, as a result of the incident, he suffered bruises, welts, and abrasions. In contrast, Balzer testified that, when Pryer was brought to the RHU, his handcuffs were removed as a preliminary step to a strip search. According to Balzer, Pryer then began screaming and punched Balzer in the face. Balzer testified that he, Weaver, and Caponi used force to subdue Pryer. He said that the officers eventually strip-searched Pryer and placed him in a cell.

_____

1. In their briefs, the parties apparently agree that "C.O. 3 Slavic" is Lt.
Richard Slavec, and thus, we have adhered to this corrected spelling despite the official caption.

3

The next incident took place on September 27, 1990 as Pryer was being searched before going outside for exercise. While being searched, Pryer complained that Officer Wilson, who was conducting the search, had impr operly fondled his buttocks, so he requested that another guar d complete the search. That request led to an exchange of words and, according to Pryer, Wilson punched him in the face. Officers Caponi and Bursey then began beating Pryer with their fists and batons, and kicked him to the gr ound. Bursey called for help, and Officers Slavec, Primm, Pr orock, and Trunick arrived in response.

At this point, according to Pryer, while he was on the floor, Slavec ordered his subor dinates to stop hitting Pryer, and he handcuffed Pryer's hands behind his back. Shortly thereafter, all of the officers continued the beating. Pryer was then dragged outside the building, and led to an elevator that would take him to the third floor of the RHU. He claims that Officers Prorock, Bursey, Caponi, and Slavec subjected him to additional beatings inside the elevator and along the walkway on the third floor. He said that, at the entrance to the third floor cells, Officers Cameron, Tokarski, Jefferson, Ciesielski, Jacobs, and Cook met him with a barrage of nightstick blows and that Primm and Trunick also participated.

According to Pryer, Officers Slavec, Bursey, Cook, and other guards then led Pryer into an isolation cell where they continued the beatings. There, Slavec jammed a nightstick into his eye and ordered the others to br eak his hands and legs. The officers then held Pryer down to the cell floor, and struck his hands and legs with nightsticks. Cook also jumped from a cell bed onto Pryer's stomach, and Cameron and Jacobs used a stun gun on him.

Pryer introduced medical records to prove his injuries. He testified, without dispute, that two bones on his left hand and three on his right hand were br oken; his lower left leg was fractured in two places; he was bleeding fr om the mouth; he urinated blood; his body was cover ed with bruises; and he had welts on his face, bumps on his head, a swollen eye, and split lips. Further, Pryer testified that, as a result of the incident, he received stitches to his head and lower left leg and his left leg was put in a cast.

4

Although not all of the officers testified during the trial, their version of the events differed markedly from Pryer's testimony. According to the officers, Pryer had initiated the second incident by punching Wilson in the face and Caponi in the head. Wilson testified that he had used his baton on Pryer five to ten times, aiming below Pryer's left knee. Bursey testified that Pryer struck him as well. According to the officers, Pryer was forcibly resisting a search and had to be subdued, ultimately by the use of mace, then stripped and searched by the guards.

At the close of evidence, the District Court, on its own motion, entered a directed verdict in favor of eleven officers: Beck, Bogonovich, Bedilion, Cameron, Primm, T okarski, Clarke, Jefferson, Ciesielski, Jacobs, and T runick. In so ruling, the court stated that Pryer had "failed even to mention some of [the guards during his testimony], and in other respects his evidence rose no higher than [that the guards] were simply present at the scene but were not identified as having caused him any harm in any way." Pryer objected to this ruling at trial, but does not raise it here on appeal. The trial judge's ruling left a total of eight officers for the jury's consideration.

The judge then instructed the jury on the principles governing Eighth Amendment prison excessive force claims. However, on the issue of damages, the court only informed the jury that Pryer would be entitled to compensation for all injuries that were proximately caused by the officers' conduct. The court did not instruct the jury as to what kinds of injuries were compensable under S 1983, and did not inform the jury that it could awar d money damages for intangible harms, such as physical and emotional pain, humiliation, and fear engendered by a beating. Finally, the court informed the jury that it must r eturn an award of damages in the nominal amount of one dollar if Pryer failed to prove by a preponderance of the evidence that he suffered any actual injury or damages. Pryer, who was proceeding pro se, did not object to these instructions.

After deliberating for a little over five and a half hours, the jury found in favor of four guards (Balzer , Caponi, Weaver, and Wilson), but r eturned a general liability verdict against the other four (Slavec, Cook, Pror ock, and Bursey).

The jury awarded $1.00 in nominal damages and no compensatory or punitive damages.

B.

On March 10, 1999, the District Court, on its own motion, vacated the damages award and or dered a new trial against Slavec, Cook, Prorock, and Bursey limited to the issue of damages. In its written decision, the court held that the jury's verdict on damages was against the weight of the evidence and that a new trial was "necessary to avoid a miscarriage of justice." Additionally, the court ruled that its instructions to the jury as to both compensatory and nominal damages were, respectively, inadequate and legally erroneous. Specifically, the court recognized that it had erred "by failing to instruct the jury that it could consider plaintiff 's pain, suffering, and loss of enjoyment of life in affixing compensatory damages." The court also held that, given Pryer's undisputed proof of actual injury, an instruction on nominal damages was inappropriate. Notably, the judge did not state any reasons for limiting the second trial to the issue of damages.

C.

On February 22, 2000, after appointing counsel to represent Pryer, the court commenced the second trial.2 This trial focused only on the damages caused by the second incident.3 The court began the trial by reading a stipulation of facts and a summary of the medical r ecords describing Pryer's injuries. Pryer then testified at length against Slavec, Cook, Prorock, and Bursey, and he provided detailed testimony regarding the natur e and extent of his injuries. At several times during the course of the trial, the District Court precluded defense counsel fr om arguing that

_____

2. The Court takes this opportunity once again to express its appreciation to Jere Krakoff, Esq., Cathy Bissoon, Esq., and the law firm of Reed, Smith, Shaw & McClay, LLP for agreeing to represent Pryer in this case.

3. All of the officers implicated in the first incident were either dismissed
by the court or exonerated by the jury.

6

Pryer's injuries were apportionable among the various officers, some of whom were no longer defendants in the action. On March 3, 2000, the court issued a detailed written explanation for this ruling, which r elied primarily on the principles of joint and several liability, and indivisible harm, found in the Restatement (Second) of Torts. Following detailed instructions on damages, the jury awarded Pryer $300,000 in compensatory damages against all four officers.

On March 13, 2000, the defendants moved for a new trial on the issue of damages or, in the alter native, to reduce the amount of the verdict on the grounds that the court had erroneously instructed the jury that the four officers were responsible for all injuries sustained in the course of the incident. The motion was denied. The four officers now appeal the District Court's order of a new trial limited solely to damages and the court's ruling precluding defense counsel from arguing the issue of causation to the jury.

II.

The District Court exercised jurisdiction over this case under 28 U.S.C. SS 1331 and 1334. We have jurisdiction to hear this appeal under 28 U.S.C. S 1291. W e review a district court's order granting or denying a new trial for abuse of discretion, unless the court's decision is based upon the application of a legal precept, in which case we exercise plenary review. Failla v. City of Passaic, 146 F.3d 149, 152 (3d Cir. 1998).4

_____

4. At the outset, we note that the District Court articulated no rationale in summarily ordering that "a new trial will be held in this case on the issue of damages." Ordinarily, where a trial court fails to explain its grounds for exercising discretion, and its reasons for doing so are not otherwise apparent from the recor d, we are left without any meaningful manner in which to review that ruling. Becker v. Arco Chem. Co., 207 F.3d 176, 181 (3d Cir. 2000). In those circumstances, we need not defer to the trial court's ruling and may undertake to examine the record and make our own determination. See, e.g., id. (independently reviewing trial court's denial of evidentiary objection). Mor eover, in this case, as we discuss later, the District Court's or der of a partial new trial turns on the
application of a legal precept to the evidence adduced at trial. Therefore,
we will apply a plenary or de novo standar d of review.

7

A.

We first conclude that the District Court did not abuse its discretion in ordering a new trial. A trial court is empowered to order a new trial on its own initiative "for any reason that would justify granting one on a party's motion." Fed. R. Civ. P. 59(d). A new trial may be granted when the verdict is contrary to the great weight of the evidence; that is, "where a miscarriage of justice would r esult if the verdict were to stand." Olefins Trading, Inc. v. Han Yang Chem Corp., 9 F.3d 282, 289 (3d Cir. 1993) (internal quotations and citations omitted).

Generally, "damages are available under[S 1983] for actions `found . . . to have been violative of . . . constitutional rights and to have caused compensable injury.' " Carey v. Piphus, 435 U.S. 247, 255 (1978) (internal quotations, citations, and emphasis omitted). However, "substantial damages should be awarded only to compensate actual injury." Id. at 266. Where a constitutional deprivation has not caused actual injury, an award of nominal damages may be appropriate. See id. But nominal damages may only be awarded in the absence of proof of actual injury. See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11 (1986) ("[N]ominal damages . . . are the appropriate means of`vindicating' rights whose deprivation has not caused actual, pr ovable injury."); Carey, 435 U.S. at 248, 266-67 (approving recovery of nominal damages without proof of actual injury).

In his written opinion, the District Judge r ecognized that he had erroneously instructed the jury on nominal damages and failed to inform it of the availability of compensatory damages for pain and suffering. Pryer plainly testified as to both the subjective and physical manifestations of injuries he sustained as a result of the incident on September 27, 1990. Pryer further supported this testimony with objective medical records. The guards, however , neither introduced evidence to dispute that Pryer had, in fact, suf fered these injuries, nor challenged their nature, extent, and seriousness. Given this evidence, the District Court did not abuse its discretion in concluding that an awar d of only

8

$1.00 in nominal damages was against the weight of the evidence and that a new trial was required.

We also agree with the trial judge that his charge did not fairly and adequately instruct the jury as to the applicable law on damages, and thus, did not provide the guidance necessary for a determination of an appropriate award. "The standard of review for the district court's ruling on points for charge is . . . abuse of discretion." Link v. Mercedes-Benz of N. Am., Inc., 788 F.2d 918, 922 (3d Cir. 1986). Where a jury charge is alleged to have stated an incorrect legal standard, "we will review the charge as a whole in the light of the evidence to determine if it fairly and adequately submitted the issues to the jury and we will reverse if the instructions were capable of confusing and thereby misleading the jury." Griffiths v. CIGNA Corp., 988 F.2d 457, 462 (3d Cir. 1993) (citation omitted).

In S 1983 actions, damages for violations of constitutional rights "may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . , personal humiliation, and mental anguish and suffering." Stachura, 477 U.S. at 307 (internal quotations and citations omitted). The court's error in failing to instruct as to the availability of damages for such intangible harms, coupled with its emphasis on nominal damages, rendered the totality of the instructions confusing and misleading. See Connecticut Mut. Life Ins. Co. v. Wyman, 718 F.2d 63, 65 (3d Cir. 1983). Moreover, the error was fundamental because the incomplete instructions prevented the jury from considering intangible injuries such as pain and suffering. See Levinson v. Prentice-Hall, Inc., 868 F.2d 558, 564-65 (3d Cir. 1989). Under these circumstances, we conclude that the District Court did not abuse its discretion in ordering a new trial.

B.

Notwithstanding this result, the guards claim that, because the issues of liability and damages were so closely interrelated, the new trial should have been extended to all issues. The guards infer from the first verdict that the jury had not completely accepted Pryer's version of the facts,

9

and thus, they accuse the trial court of substituting its judgment for the jury's findings by effectively holding the four remaining officers responsible for all injuries.

Pryer, however, contends that the guar ds were well aware before the commencement of the second trial that testimony would be elicited about the underlying incident. Moreover, he notes that the guar ds did not make a motion in limine or other objection during the second trial, and in fact fully participated in the development of the trial record, including the drafting of certain stipulated facts and the presentation of conflicting testimony and evidence about the events of September 27, 1990. Thus, accor ding to Pryer, the District Court properly permitted both parties to present evidence concerning liability to the extent that such evidence was relevant to the issue of damages, thereby eliminating any threat of injustice.

District courts are authorized to grant new trials as "to all or any of the parties and on all or part of the issues." Fed. R. Civ. P. 59(a). In this regar d, we are guided by the Supreme Court's pronouncement in Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931): "Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable fr om the others that a trial of it alone may be had without injustice." Consistent with these principles, a new trial limited solely to damages is improper where "the question of damages . . . is so interwoven with that of liability that the for mer cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial." Id. That is, "[t]he grant of a partial new trial is appropriate `only in those cases wher e it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other issue.' " Elcock v. Kmart Corp., 233 F .3d 734, 758 (3d Cir. 2000) (quoting Romer v. Baldwin, 317 F .2d 919, 922–23 (3d Cir. 1963) (internal quotations and citation omitted)).

In the seventy years since the Gasoline Pr oducts decision, we have steadfastly applied this standard "to prevent limited new trials where a tangled or complex fact situation would make it unfair to one party to determine damages

10

apart from liability, or where `ther e is reason to think that the verdict may represent a compr omise among jurors with different views on whether defendant was liable.' " Vizzini v. Ford Motor Co., 569 F.2d 754, 760 (3d Cir. 1977) (citing 6A Moore's Federal Practice P 59.06, at 59-89 (1973) and quoting 11 C. Wright & A. Miller, Federal Practice and Procedure S 2814, at 96 (1973)). See, e.g., Simone v. Golden Nugget Hotel and Casino, 844 F.2d 1031, 1041 (3d Cir. 1988) (affirming new trial order on all issues for false imprisonment claim where jury "would first have to find at what points the unlawful detention began and ended," and it would additionally have to assess defendant's conduct in determining whether punitive damages wer e warranted); Spence v. Board of Educ. of the Christina Sch. Dist., 806 F.2d 1198, 1201-02 (3d Cir. 1986) (affirming new trial order on all issues where plaintiff 's claim for emotional distress damages had to be evaluated in light of all cir cumstances surrounding alleged misconduct, and because plaintiff sought punitive damages, which required pr esentation to jury of all facts leading up to alleged adverse employment decision).

By contrast, where the error on appeal r equiring a new trial related peculiarly to the damages portion of the trial only, and did not implicate the jury's liability ver dict, we have permitted a new trial limited only to the issue of damages. See, e.g., Wagner v. Reading Co., 428 F.2d 289, 291-93 (3d Cir. 1970) (remanding for new trial on damages after holding that exclusion of plaintiff 's evidence of wage records, which related only to damages issue, was prejudicial error).

A review of the first trial's transcript plainly reveals that the incident on September 27 involved a "tangled or complex fact situation." Both sides vigor ously contested liability. Pryer presented, in addition to himself, two other inmates who witnessed portions of the incident, while seven correctional officers testified on behalf of the defense. Pryer also introduced uncontroverted testimonial evidence and objective medical records to substantiate his extensive injuries resulting from the beating. Based upon the evidence adduced at trial, Pryer's injuries could be attributed to the guards' reasonable use of force, their

11

excessive use of force, his own actions, or some combination of these several factors. Moreover, while the first jury may have concluded that each of the guards in the present appeal used excessive force against Pryer, it is far from clear that Pryer's injuries cannot be apportioned based upon the nature and extent of his injuries, who was involved, and where the alleged beatings took place.[5]

In particular, Wilson, who was only involved at the beginning of the September 27 incident, testified that Pryer had initiated the second incident by punching him in the head, to which he responded by striking Pryer five to ten times on the lower left leg with his baton. Caponi, who appears to have been involved for a longer duration than Wilson, also testified that Pryer had punched him in the head. Caponi was among those guards who utilized force to subdue Pryer in response to his continued resistance, which ultimately included the use of mace and a compulsory strip search. Pryer confirmed this use of force, testifying that Caponi, among others, had repeatedly beat him with fists, batons, and kicks, eventually dragging him outside before leading him to the isolation cell on the third floor of the RHU. The jury, however, exonerated both Wilson and Caponi by finding that their use of force was reasonable under the circumstances. Thus, it is impossible from the record before us to determine whether the injuries sustained by Pryer resulted from Wilson's and Caponi's reasonable use of force, the other guards' excessive use of force, Pryer's own conduct, or some combination of these

_____

5. We do not agree with the District Court that Pryer suffered an indivisible injury and that the appellants were jointly and severally liable
for the entire injury. On the contrary, for the reasons expressed in the text, we believe that there was a " `reasonable basis for division according
to the contribution of each.' " SEC v. Hughes Capital Corp., 124 F.3d 449, 455 (3d Cir. 1997) (quoting United States v. Alcan Aluminum Corp., 964 F.2d 252, 268–69 (3d Cir. 1992)); see also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts S 52, at 345 (5th ed. 1984) ("There will be obvious difficulties of proof as to the apportionment of certain elements of damages, such as physical and mental suffering and medical expenses, but such difficulties are not insuperable, and it is better to attempt some rough division than to hold one defendant for the wound inflicted by the other .").

possibilities not otherwise evident from the jury's general verdict.

In short, the factual backdrop establishing the respective culpabilities of the various guards and Pryer himself is entangled within the assessment of the severity of Pryer's injuries. At its core, Pryer's claim is that he was the victim of excessive force at the hands of several officers -- and this cast of officers changed from scene to scene in the RHU much like the cast in a multiple-act play. In such a case, a jury assessing damages must know the precise factual context in which Pryer's injuries arose and who caused those injuries. Thus, this is a classic example of where a new trial on all issues is required under the Gasoline Products standard.

Moreover, the probability that the verdict was tainted by compromise also leads us to favor a new trial on all issues.6 In this respect, we have held that, "when a jury's verdict is obviously the result of a compromise on the questions of liability and damages, it is considered unjust to order a

_____

6. Contrary to the dissent, we read the guar ds' brief as raising this argument. Most of their brief is devoted to their primary argument that the District Court should not have order ed a retrial at all. However, in the pages devoted to the fallback argument that any retrial should not have been limited to damages, the brief unquestionably raises the argument that the issues of liability and damages are so "intertwined" in this case that they cannot fairly be tried separately. A compromise verdict is simply one example of a type of case in which these issues are "intertwined"; it is not a separate ground for refusing to order a retrial on damages only. Moreover, the brief (at 22) refers expressly to this type of case. Citing Morrison Knudson Corp. v. Fir eman's Fund Ins. Co., 175 F.3d 1221, 1255 (10th Cir. 1999), the brief states that one of "the two instances in which the Gasoline Products rule warrants full retrials" is "when an insupportable damage award calls into question the original jury's finding on liability." As Morrison Knudson states on the cited page,
"[t]he most common example is a compr omise verdict, i.e., an award of suspiciously low damages in a case of closely contested liability." 175 F.3d at 1255.

In addition, unlike the dissent, we do not believe that the guards' attorney made any statement at oral ar gument that may fairly be interpreted to mean that the first ver dict did not have the hallmarks of a compromise.

new trial on damages only." Rosa v. City of Chester, 278 F.2d 876, 883 (3d Cir. 1960) (citations omitted). In this case, the award of $1.00 is not easy to reconcile with the uncontested evidence of injuries Pryer introduced. Indeed, we believe the verdict most likely represented a compromise among jurors with differing views on whether the correctional officers were liable. Here, we are unable to understand why the first jury returned an award of only $1.00 after finding that four officers had used excessive force while two others had used only reasonable force. In such a case, a new trial should be granted on all issues. See, e.g., Stanton by Brooks v. Astra Pharma. Prods., Inc., 718 F.2d 553, 576–77 (3d Cir. 1983) (ordering new trial on all issues where award was fairly small compared to reported verdicts for similar injuries to similarly situated plaintiffs, and far smaller than the evidence might have supported, thus strongly indicating that jury's verdict represented a compromise); accord Lucas v. American Mfg. Co., 630 F.2d 291, 292–94 (5th Cir. 1980) (ordering new trial on all issues where jury's award of less than half of stipulated out-of-pocket losses was a compromise induced by trial judge's instruction rushing the jury to reach a verdict); Hatfield v. Seaboard Airline R.R. Co., 396 F.2d 721, 723–24 (5th Cir. 1968) (ordering new trial on all issues where liability was hotly contested, and after lengthy deliberations, the jury's $1.00 award when plaintiff had uncontested special damages of $2,795.75 and substantial pain and suffering "can be seen only as the result of either a compromise on one of the liability issues or as an attempt to render a verdict for [the defendant] with [the defendant] paying the costs"); National Fire Ins. Co. of Hartford v. Great Lakes Warehouse Corp., 261 F.2d 35, 38 (7th Cir. 1958) (ordering new trial on all issues where it would be "absurd to say" jury's award of only one-half the amount of uncontested damages losses "was anything other than a compromise," especially when liability was vigorously contested); Schuerholz v. Roach, 58 F.2d 32, 34 (4th Cir. 1932) (ordering new trial on all issues where jury's "grossly unjust and inadequate" award of $625 for plaintiff blinded in one eye "can give rise only to the inference" of a compromise verdict).

14

On this record, there is no r easonable basis for concluding with assurance that the questions of liability and damages were so separable that the jury's determination on one issue had no bearing on its determination on the other. Simply put, it is not "clearly apparent that the issue [of damages] is so distinct and separable from the [issue of liability] that a trial of it alone may be had without injustice." Pryer essentially argues that this error was cured by the parties' conduct during the second trial. However, this puts the cart before the horse as we must confine our review to the recor d before the District Court at the time when it made the decision to limit the trial solely to damages. Thus, neither the evidence subsequently introduced at the second trial, nor the higher verdict, are relevant. See, e.g. , Stanton, 718 F.2d at 577 n.43 ("[W]e may not take this second, higher verdict into account in deciding whether the district court abused its discretion in limiting that new trial to damages.").

Unlike a situation in which a discretionary ruling resulting in prejudice to a party is cur ed by a cautionary instruction during the trial, the unfairness to the guards occurred after the first verdict on the District Court's own initiative, thereby tainting any subsequent pr oceedings. Thus, on the record presented, we decline to adopt the practice urged by Pryer and promulgated in other circuits whereby new trials are permitted solely on damages with cautionary instructions to the second jury. See, e.g., Watts v. Laurent, 774 F.2d 168, 181–82 (7th Cir. 1985); Wheatley v. Beetar, 637 F.2d 863, 867–68 (2d Cir . 1980). A straightforward application of the Gasoline Products standard remains the law in this cir cuit.

Therefore, we conclude that the District Court erred in limiting the scope of the new trial solely to damages. The proofs Pryer submitted, upon which the finding of liability rests, necessarily form the foundation for the award of damages. There was no conceivable fashion by which a second jury could fairly evaluate the extent of Pryer's damages without also fully appreciating the manner in which the force, both reasonable and excessive, gave rise to his injuries. Under the Gasoline Products  standard, the guards are entitled therefore to a new trial on all issues,

15

including liability, causation, and damages. See, e.g., Atkins v. New York City, 143 F.3d 100, 104 (2d Cir. 1998) (ordering new trial on all issues because issue of liability was close and vigorously contested, and ver dict on damages was inconsistent with facts adduced at trial).

III.

For the foregoing reasons, we conclude that, while the District Court properly ordered a new trial after the first jury's nominal damages award, it erred in limiting the scope of the trial solely to damages. Accordingly, we will reverse the District Court's order granting a new trial and remand the case for further proceedings consistent with this opinion.

16

MANSMANN, Circuit Judge, concurring in part, and dissenting in part.

Following an initial trial, despite an erroneous nominal damage award, Pryer had won something important: He had vindicated his constitutional rights by obtaining the formal determination of a jury that the savage beating administered to him by Appellants was wrongful. Under the majority's ruling, that determination is taken away, even though no one contends that it was the product of any error. Solely because the guards benefitted from an erroneous instruction that contributed to an inadequate damages determination, the majority now holds that they must be accorded a further windfall by giving them a second bite at the liability issue. I respectfully dissent.[1]

I.

At the outset, it appears that the majority has failed to apply the appropriate standard of review. In Vizzini v. Ford Motor Co., 569 F.2d 754 (3d Cir. 1977), we first enunciated the scope of review to be applied in determining the appropriateness of an order limiting a new trial to damages. See id. at 760 ("[T]he standard we apply on review is whether, viewing the circumstances as a whole, it was consistent with the sound exercise of discretion for the trial judge to limit the new trial to the issue of damages."); see also Stanton v. Astra Pharmaceutical Prods., Inc., 718 F.2d 553, 576 & n.42 (3d Cir. 1983) (observing that "the only question is whether the district court abused its discretion in ordering" a partial new trial on damages).[2]

_____

1. I join, however, in Part II(A) of the majority's opinion, which upholds the District Court's decision setting aside the nominal damages verdict.
2. Our application of an abuse of discretion standard is in keeping with the practice of other courts. See, e.g. Sprague v. Boston & Maine Corp., 769 F.2d 26, 28 (1st Cir. 1985) (allowing separate retrial on damages and noting that "[t]he trial judge is afforded broad latitude . . . to limit the new trial to the issue of damages if liability has, in his opinion, been competently determined by the jury") (citing cases); Young v. International Paper Co., 322 F.2d 820 (4th Cir. 1963) (affirming trial court's limitation to issue of damages and holding that trial judge, in reviewing record, could conclude that jury properly found defendants liable but verdict too low to be sustained).

17

The majority acknowledges the abuse of discr etion standard, but it effectively applies a de novo standard, reversing the trial court because this court is led to "favor a new trial on all issues" due to this court's inability to understand why the jury awarded only nominal damages. Supra at 13. I recognize that under Gasoline Products it must "clearly appear" that a partial r etrial may be had without injustice.3 Nevertheless, I believe that the required clarity is for the trial judge, whose view should pr evail even if the issue is less than clear to us as a r eviewing court.

There is good reason to commit such matters to the sound discretion of the trial court. The trial court has seen all of the evidence first-hand. It has ruled on motions, instructed the jury, and overseen the conduct of trial. In short, the trial court has lived with and thought about the case for a considerable period, and so is in an advantageous position to determine what will or will not overtax the jury's discernment. We, on the other hand, upon review of a cold record, cannot be expected to achieve the same mastery of every nuance of the case. It is hardly surprising that, where a trial judge is justly assured that issues are separable, the matter may appear less clear to a reviewing court.

Rather than reversing whenever we cannot be sur e that the issues are separable, I would uphold the trial court's exercise of discretion unless we could say with some assurance, based upon clearly identified factors in the record, that the issues are not separable.4 Because the

_____

3. See Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931) (holding that a partial new trial "may not be properly resorted to unless it clearly appears that the issue to be r etried is so distinct and separable from the others that a trial of it alone may be had without injustice"). See also, e.g., Williams v. Rene, 72 F.3d 1096, 1101 (3d Cir. 1995) (holding that under Gasoline Products a new trial must extend to all issues where "the issue of damages . . . is so intertwined with liability
that one cannot be submitted to the jury independently of the other without confusion and uncertainty.").

4. An example of the appropriate level of deference may be found in Stanton, where we reversed the partial retrial only because a "great deal of evidence" in the record "strongly suggest[ed]" a compromise verdict,

majority's opinion in this case does not identify a record basis for finding an abuse of discretion by the District Court, it effectively leaves no discretion. This result is contrary to the purpose of the Gasoline Pr oducts rule in that it will preclude even justly limited r etrials, thereby thwarting judicial economy and unduly burdening plaintiffs who have already fairly obtained a favorable liability verdict. See Wheatley v. Beetar, 637 F.2d 863, 867–68 (2d Cir. 1980) (noting that where defendant has had a fair trial on the issue of liability it would be "grossly unfair to plaintiff, as well as contrary to the spirit of F.R. 59, to require a retrial of the question of defendant's culpability" solely because the jury did not properly consider damages) (internal quotation marks omitted).5

II.

In deciding whether a new trial on damages alone would be unjust, it is not enough simply to observe that issues concerning damages and liability are interwoven. Of necessity they are always interrelated, because only those damages proximately caused by conduct giving rise to liability are recoverable. The universal r equirement of a causal link between liability and damages means that the issues can never be completely unlinked.6

Nevertheless, it is clear that in many cases damages may justly be tried apart from liability. Such separate trials are

_____

based on two objective factors: a comparison of the verdict amount to the evidence that provided a "compelling indication" of compromise, and the jury's answers to "special questions" that"apparently absolved [the defendant] of liability". Stanton, 718 F.2d at 576–78 & n.45. As discussed in Part II, below, no such compelling objective factors are present here.

5. Moreover, in the present case, the majority has gone beyond simply substituting its judgment for that of the trial court: As will be explained below, the majority has based its decision on considerations that were not placed before the trial court.

6. See Olsen v. Correiro, 1995 WL 62101 *3 (D. Mass., Feb. 3, 1995) (observing that the "interwoven" test of Gasoline Products is "quite difficult to apply in practice, for damages and liability are in some sense interwoven").

19

a common occurrence, both ab initio and on retrial.[7] See
Rosa v. City of Chester, 278 F.2d 876, 882 (3d Cir. 1960)
(observing that "[f]ederal appellate and district courts have
time and again ordered new trials as to damages only"). See
generally Propriety of Limiting to Issue of Damages Alone
New Trial Granted on Ground of Inadequacy of Damages –
Modern Cases, 5 A.L.R. 5th 875 at S 4 (1993) (providing
extensive citations to cases where "new trial was required
upon damages only, since defendant's liability was
supported or established by the evidence and ther e was no
necessity to retry the liability issue").

Assessment of the degree to which facts concer ning
liability and damages are interrelated seems a quixotic
venture with little direct bearing on the justice or injustice
of separate trials; and it does not lead to any workable
standard. A more serviceable approach is to consider
whether there is something about how the interr elationship
unfolded at trial that would make separation of the issues
on retrial unjust. Courts have focused on two aspects in
particular: whether the jury's erroneous tr eatment of
damages infected its determination of liability, and whether
it appears that the verdict on liability and damages together
represents a compromise. See,e.g., Olsen v. Correiro, 1995
WL 62101 *4 (D. Mass., Feb. 3, 1995) (observing that in
determining "interwoven" test "some courts ask whether the
invalidity of the jury's reasoning as to one part of the
verdict could have `infected' their r easoning as to the other
part" and that "[a] variation on the `infection' inquiry is the
`compromise verdict' inquiry, under which a court asks . . .
whether . . . an inadequate damages award r eflected the
jury's ambivalence about its finding of liability").

The first test, then, is whether the error which
undermined the damages verdict also corrupted the liability
verdict. Apropos of this standard, we have held that "if the
error compelling the reversal relates solely to the damage
question, the new trial will be restricted to that question."

_____

7. The rules expressly authorize such separate trials. See Fed. R. Civ. P.
42(b) (permitting, in furtherance of convenience or when conducive to
expedition and economy, separate trial of any separate issue); Fed. R.
Civ. P. 59(a) (permitting new trial on"all or part of the issues").

Rosa, 278 F.2d at 883. Moreover , we have consistently recognized the propriety of partial new trials "in those cases where it is plain that the error which has crept into one element of the verdict did not in any way af fect the determination of any other issue." V inzinni, 569 F.2d at 760 (quoting Romer v. Baldwin, 317 F.2d 919, 922–23 (3d Cir. 1963)) (additional citations omitted).

Here, there is no suggestion that the err oneous instructions or reasoning which necessitated r etrial as to damages had any bearing on the liability ver dict. The finding of liability was amply supported by the evidence, and Appellants have not assigned any error with respect thereto. I do not read the majority opinion as indicating that the liability verdict was erroneous.

It is with respect to the second test for unfairness -- the "compromise verdict" inquiry -- that I must part ways with the majority. Appellants never took the position, either before the District Court or in briefing before this Court, that the liability verdict represented a compromise.8 Ordinarily an appellate court will not r everse a trial court on grounds not asserted by the parties. Nevertheless, the majority opines that "the verdict most likely represented a compromise among jurors with differing views on whether the correctional officers were liable", because the majority is "unable to understand" why the jury would otherwise return an award of $1.00 despite Pryer's uncontested evidence of injuries. Supra at 14.

A compromise verdict results when jur ors resolve their inability to make a determination with unanimity as to liability by finding inadequate damages. As the majority correctly observes, we have previously held that a limited new trial is unjust where the verdict is"obviously the result of compromise" on questions of liability and damages. Id. (citing Rosa, 278 F.2d 876).9 To avoid undue interference

_____

8. Indeed, when invited to adopt that position at oral argument, Appellants' counsel effectively declined to do so.

9. It is significant that the statement in Rosa cited by the majority is followed immediately by an explicit recognition of the converse rule where there is no such obvious compr omise: "On the other hand if the error compelling the reversal relates solely to the damage question, the new trial will be restricted to that question." Rosa, 278 F.2d at 883.

with the trial court's discretion to limit a retrial, we have required trial on all issues only where the compromise is "obvious". See Rosa, 278 F.2d at 883.10 This standard is in keeping with the practices of our sister Courts of Appeals.11 It is not enough that the damage award is inadequate, or nominal.12 Rather, the compromise must be evident from other factors of record.13 Where the presence of compromise is doubtful, a new trial on liability is not required.14

_____

10. Cf. Huddleston v. Crain Brothers, Inc., 183 F. Supp. 874 (W.D. Pa. 1960) (concluding new trial on damages alone was appropriate where verdict was not "absolutely the result of a compromise on liability and damages") (emphasis added) (citing Rosa, 278 F.2d 876).

11. See Burger King Corp. v. Mason, 710 F.2d 1480, 1487 (11th Cir. 1983) (defining compromise verdict as "one where it is obvious that the jury compromised the issue of liability by awarding inadequate damages.") (emphasis added); Freight Terminals, Inc. v. Ryder System, Inc., 461 F.2d 1046, 1053 (5th Cir. 1972) (same); Great Coastal Express, Inc. v. International Brotherhood of Teamsters, 511 F.2d 839 (4th Cir. 1975) (new trial required where inadequate verdict "could only have been a sympathy or compromise verdict") (emphasis added). See also Spell v. McDaniel, 604 F. Supp. 641, 653 (E.D.N.C. 1985) (finding new trial on damages proper where the "totality of the circumstances simply [did] not point unerringly to a compromise verdict") (emphasis added).

12. See Rosa, 278 F.2d 876 (inadequate verdict in amount of $1 held not indicative of compromise on issues of liability and damages). See also De Luca v. Wells, 297 N.Y.S.2d 35 (1968) (noting that not every inadequate verdict is ipso facto a compromise verdict); Spell, 604 F. Supp. at 653 (holding that an award of minimal damages, in itself, is insufficient to prove a compromise) (citing Burger King, 710 F.2d at 1487). Cf. Edwards v. Sears Roebuck & Co., 512 F.2d 276, 282 (5th Cir. 1975) ("A jury's finding as to liability can be binding even though its monetary award is found to be [inadequate] or even improperly influenced – our deference to and faith in the jury system demands at least this much.").

13. See Burger King, 710 F.2d at 1487; Mekdeci v. Merrell National Laboratories, 711 F.2d 1510, 1513–14 (11th Cir. 1983).

14. Cf. Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 54 (3d Cir. 1989), (rejecting claim for new trial although it "[could] not be said with fair assurance that [a compromise verdict] did not occur", and noting that "[o]ur task on review is to ascertain only whether the jury's verdict is reasonable in light of the evidence presented, and not to indulge in unsubstantiated and speculative assertions"), effectively overruled on other grounds, Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).

Here the presence of a compromise is certainly not obvious. That the jury was able to find some of the initial defendants liable and others not clearly demonstrates its ability to assess and distinguish conduct, and to adjust its liability findings accordingly. And unlike some of the cases relied upon by the majority, the jury in this case did not simply "split the difference" between the parties' positions in arriving at a damages figure. Measured against the extent of the beating and injuries inflicted on Pryer, an award of $1 hardly seems a "compromise".15

The majority does not point to any factors suggestive of compromise, other than the purportedly inexplicable deficiency in damages. But that deficiency is readily explained by the District Court's erroneous instructions. One need not reach out in search of speculative alternative explanations where the very reason for the new trial was the court's acknowledgment of its erroneous instructions on damages. To all appearances, the reason for the jury's nominal damages award was the court's erroneous instruction on that very issue, and not that the jury did not mean what it said as to liability.16 In Rosa, we found that an inadequate damages verdict was not indicative of compromise where the inadequacy was apparently due to erroneous evidence and instructions.17 Numerous cases are in accord.18 In the present case, we should similarly decline

_____

15. Compare Stanton, 718 F.2d at 576–77 (finding "compelling indication" of compromise in damages award of about one third of the amount supported by the evidence).

16. Any doubt on this score should be resolved by according the jury's liability verdict the usual presumption of propriety and regularity. See Spell, 604 F. Supp. at 651 (in conducting compromise inquiry, court started from proposition that jury's verdict is to be afforded every inference that it is proper and honest).

17. See Rosa, 278 F.2d at 882.

18. See, e.g., Saide v. Stanton, 659 P.2d 35 (Ariz. 1983) (concluding new trial could be limited to damages alone, though liability issue was strongly contested, where inadequacy in damage award resulted from trial court's erroneous instructions to jury regarding amounts includable in assessing damages); Capelouto v. Kaiser Foundation Hospitals, 500 P.2d 880 (Cal. 1972) (new trial properly limited to damages where ample evidence supported liability, and inadequacy of the verdict was probably

to presume that the liability verdict was a product of compromise.19

III.

Appellants have raised the possible apportionment of Pryer's injuries in a separate assignment of err or, contending that the trial court improperly pr evented the jury in the second trial from considering whether some or all of the injuries resulted from the conduct of guards who were absolved of liability in the first trial. If Appellants' contention were correct, they would be entitled to a new trial on damages, in which they could attempt to assign responsibility for particular injuries to the other guards. They would not, however, be entitled to r evisit the question of their own liability.

Appellants' contention on apportionment turns on whether the evidence in the second trial would allow a non–

_____

due to erroneous jury instruction); Cedars of Lebanon Hosp. Corp. v. Silva, 476 So. 2d 696 (Fla. 3d DCA 1985) (affirming limitation of new trial to damages where inadequate award was apparently generated by trial court's instruction and case was not one wher e evidence of defendants' liability was tenuous or insubstantial, or where it appeared that juror who would have found no liability whatsoever compromised with those who would have found defendants liable, and observing that new trial on liability was not required simply because the issue was disputed).

19. Some courts have employed an explicit multi–factorial analysis to determine whether a compromise ver dict was reached, based on: (1) clarity of the jury instructions and verdict form; (2) length of jury deliberations; (3) strength of the evidence as to liability; (4) questions and notes from the jury during deliberations; and (5) whether the case involved a sympathetic plaintiff and unsympathetic defendant. See, e.g., Mekdeci, 711 F.2d 1510; Spell, 604 F. Supp. at 651. Here, there is no indication that the liability instructions wer e unclear; that the jury deliberations were over–long; that liability evidence was lacking; that the jury asked questions evincing uncertainty; or that Pryer, an incarcerated felon, was a particularly sympathetic plaintiff. Compare Vizzini, 569 F.2d at 761 (requiring full retrial wher e liability evidence was "very thin" and jury's failure to agree on damages after two full days of deliberations indicated that deliberations were affected by liability issues).

24

speculative attribution of particular injuries to particular causes. The majority addresses this issue only in passing. While it does opine that "it is far from clear that Pryer's injuries cannot be apportioned", this comment appears to be part of its discussion of the first trial. See supra at 12.[20] Whether such an apportionment was supported by the evidence in the first trial is of no moment, since the majority has agreed with the District Court that the damages verdict was tainted by erroneous instructions that necessitated a new trial.

The issue properly before us concer ns whether apportionment was proper on the recor d before the jury in the second trial (not whether the first jury could or did apportion damages). As to that issue, Appellants had the burden of providing a record basis for non-speculative attribution of particular injuries to particular causes.[21] Appellants do not attempt to parse the recor d to show how such a determination could be made; nor does the majority. Appellants merely point out (and the majority r epeats) that one non-liable guard admitted to beating Pryer on the leg which was broken. But this was only one beating in a long-running melee that included other assaults to the same leg. It appears that any conclusion that one guar d's conduct was the sole cause of that injury would be speculative.

As the District Court held,

The evidence in this case clearly established that

_____

20. The majority appears to intimate that thefirst jury might have arrived at its $1 verdict by determining that all of the substantial elements of damage were caused by guards found not liable. This may be possible in theory, but given the usual r elationship between force and injury, it is hardly plausible that a jury would find that guards who inflicted multiple broken bones, lacerations, contusions and head injuries used only reasonable force, while concluding that the force used by those who did only nominal damage was excessive.

21. See, e.g., United States v . Alcan Aluminum Corp., 964 F.2d 252, 268-69 (3d Cir. 1992) ("[W]here joint tortfeasors cause a single and indivisible harm for which there is no reasonable basis for division according to the contribution of each, each tortfeasor is subject to liability for the entire harm. . . . . [I]t is the tortfeasor's burden to establish that the damages are capable of such apportionment.").

25

plaintiff suffered a single indivisible injury caused by multiple blows inflicted by multiple guards. There is no logical, reasonable or practical basis to apportion his pain, suffering . . . between the blows inflicted by the four defendants and the blows inflicted by the other guards, or to attribute such injuries to the blows inflicted by any particular guard. Any attempt to do so would be purely arbitrary.

Mem., March 3, 2000, at 6. Because nothing in Appellants' submission or the majority's opinion convinces me that the court's analysis was incorrect, I would uphold its refusal to allow the jury to speculate as to apportionment of Pryer's damages.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

26