**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4593
_____

GARRESSA SMITH,
Administratrix as prosequendum of the estate of K.S., a minor, deceased;
CORINTHIA MITCHELL,
as parent and natural guardian for K.M., a minor, and C.M., a minor,

v.

OFFICER DEAN GRANSDEN,
individually and in his capacity as a City of Camden police officer;
CITY OF CAMDEN, a New Jersey Municipal Corporation;
COUNTY OF CAMDEN, a New Jersey Municipal Corporation;
CAMDEN COUNTY PROSECUTOR'S OFFICE;
JEFFREY FRAMPTON

GARRESSA SMITH,
Administratrix as prosequendum of the estate of K.S., a minor, deceased,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 1-08-cv-04517)
District Judge: Hon. Joseph E. Irenas
_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2014
_____

Before: SMITH, SHWARTZ, and SCIRICA, <u>Circuit Judges</u>.

1

(Filed: January 16, 2014)
_____

OPINION
_____

SHWARTZ, Circuit Judge.

This case arises out of the death of Kashon Smith, a 17-year-old resident of Camden, New Jersey, who died after being shot twice by a police officer. His mother and the administratrix ad prosequendum of his estate, Garressa Smith ("Smith"), contends that Sergeant Jeffrey Frampton, the supervising police officer at the scene, and the City of Camden ("Camden") violated Kashon Smith's constitutional rights and are liable under 42 U.S.C. § 1983. The District Court entered judgment in Camden's favor at the close of the evidence and the jury entered a verdict in favor of Frampton, which the District Court left intact. We will affirm.

I.

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history. While on patrol on the evening of December 21, 2007, Camden Police Department ("CPD") Officer Dean Gransden observed people running across a street away from the sidewalk where he saw Kashon Smith "going crazy," shouting expletives in their direction, wielding "a butcher knife and a grill fork," and threatening "to kill everybody." App. A113-14, A128. At approximately 10:35 PM, Gransden requested assistance over his car radio. Gransden exited his patrol car and

2

confronted Kashon Smith, who held his weapons in the air and charged toward Gransden. Gransden ordered Kashon Smith to drop his weapons, but Kashon Smith lunged at him, and Gransden shot him twice in his abdomen and handcuffed him behind his back, leaving him face-down with his face in mulch. Officer Phillip Wright arrived on the scene and heard the two gunshots, saw Officer Gransden holster his weapon and handcuff Kashon Smith, and called for an ambulance at approximately 10:42 PM. According to Officer Wright, people emerged from their houses and the scene quickly "start[ed] to really become chaotic." App. A240.

By that point, Sergeant Jeffrey Frampton and other CPD personnel had arrived on the scene. Sergeant Frampton was the first supervisor on the scene, arriving between 10:35 and 10:37 PM. He saw Gransden handcuff Kashon Smith and noted that Kashon Smith was conscious, breathing, moaning, and bleeding. He also called for an ambulance, but neither he nor any other officer moved Kashon Smith from his face-down position[1] or administered first aid.[2] Sergeant Frampton worked to ensure that the ambulance had a clear path and to secure the scene, keeping the group of "yelling and screaming" onlookers at a distance. App. A301-03.

---

[1] Leaving Kashon Smith face-down while he was in handcuffs appears to have been inconsistent with CPD's General Order 2003-008, which stated in pertinent part: "Due to the increased risk of positional asphyxiation, at no time shall any detainee restrained by a temporary restraint device be placed lying face down, except to the extent necessary to control the detainee during temporary restraint device application." App. A179, A327-28.

[2] With respect to his failure to provide first aid, Sergeant Frampton testified, "I didn't know what to do with a man – I was never trained to do – didn't know what to do with a man who was shot." App. A293.

3

The first emergency medical technician ("EMT") arrived at approximately 10:51 PM. She testified that she "saw a very chaotic scene" with "a lot of police and a lot of bystanders standing around." App. A349. She testified that Kashon Smith was "barely breathing" and that CPD officers refused her request to turn him over and remove his handcuffs.[3] App. A352-53. She then wiped mulch off his mouth and nose and moved him to a stretcher. A paramedic arrived immediately after the EMT. Although Sergeant Frampton testified that a CPD policy required police officers to accompany arrestees during transportation to hospitals, no police officer traveled with Kashon Smith in the ambulance when it left the scene at 10:55 PM.

Kashon Smith was breathing on his own in the ambulance. He was not given intravenous ("IV") fluids in the ambulance, but the paramedic testified that he would have attempted to start an IV in his arm had the handcuffs been removed. The paramedic also testified that he could have started an IV somewhere other than an arm, and that part of the reason he did not start an IV was lack of time during the trip to the hospital. The ambulance arrived at Cooper Hospital at 10:59 PM. Kashon Smith was pronounced dead at 12:04 AM on December 22, 2007.

Smith's expert witness testified that Kashon Smith's face-down position in the mulch and the failure to start an IV in the ambulance "diminish[ed] his ability to survive," App. A441, but he could not say there was a probability that these events

_____

[3] There appears to be no CPD policy violation for refusing a healthcare professional's request to remove an arrestee's handcuffs.

4

affected his survival. The pathologist who performed the autopsy testified that the two gunshot wounds and the associated injuries were the cause of death, and there was no evidence that asphyxiation was a contributing factor.

Smith filed suit against Officer Gransden, Sergeant Frampton, the City of Camden, the County of Camden, and the Camden County Prosecutor's Office, alleging constitutional violations under 42 U.S.C. § 1983, a violation of New Jersey's Wrongful Death Statute, and negligent infliction of emotional distress. Several of these claims proceeded to trial. Following the presentation of all evidence, the District Court granted Camden's motion for judgment as a matter of law, and following a jury verdict in favor of the remaining defendants, Smith moved for judgment as a matter of law or for a new trial with respect to her claims against Frampton only. The District Court denied her motion. Smith appeals, arguing that Frampton and Camden are liable under 42 U.S.C. § 1983.[4]

II.

When reviewing the grant of a motion for judgment as a matter of law under Rule 50(a) or the denial of a motion for judgment notwithstanding the verdict, also known as judgment as a matter of law under Rule 50(b), see Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001), we exercise plenary review and must view the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.

in its favor.  Pitts v. Delaware, 646 F.3d 151, 155 (3d Cir. 2011) (Rule 50(b)); Rego v. ARC Water Treatment Co. of Pa., 181 F.3d 396, 400 (3d Cir. 1999) (Rule 50(a)).  Under Rule 50(a), "a court may grant judgment as a matter of law in a jury trial at the close of the evidence if it determines that there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue."  Rego, 181 F.3d at 400.  A judgment notwithstanding the verdict may be granted under Rule 50(b) "only if the record is critically deficient of the minimum quantum of evidence to sustain the verdict."  Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 211 (3d Cir. 2009) (internal quotation marks omitted).

We review the District Court's denial of Smith's motion for a new trial for abuse of discretion.  Nat'l Sec. Sys., Inc. v. Iola, 700 F.3d 65, 107 (3d Cir. 2012).  A motion for a new trial should be granted when, in the opinion of the trial court, "the verdict is contrary to the great weight of the evidence; that is, where a miscarriage of justice would result if the verdict were to stand."  Pryer v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 2001) (internal quotation marks omitted).

## III.

### A.

As to Smith's motion for judgment as a matter of law against Frampton for a violation of 42 U.S.C. § 1983, we conclude that the evidence is sufficient to support the jury's finding that Frampton is not liable, thereby making judgment as a matter of law in favor of Smith inappropriate.  Given the evidence produced at trial, which we view in the

6

light most favorable to Frampton, we do not conclude that "the record is critically deficient of the minimum quantum of evidence to sustain the verdict." Acumed, 561 F.3d at 211.

To succeed on a § 1983 claim, the plaintiff must prove that an individual acting under color of law deprived him of a federal right. Gomez v. Toledo, 446 U.S. 635, 640 (1980). Here, Smith asserts Frampton deprived Kashon Smith of his Fourteenth Amendment rights by being deliberately indifferent to his medical needs in failing to provide medical assistance and failing to exercise his supervisory authority over others to ensure they provided medical assistance.

Deliberate indifference to the medical needs of arrestees violates their Fourteenth Amendment right to due process. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003); Groman v. Twp. of Manalapan, 47 F.3d 628, 636-37 (3d Cir. 1995). To demonstrate deliberate indifference to medical needs, a plaintiff must show "(i) a serious medical need, . . . (ii) acts or omissions by [law enforcement] officials that indicate deliberate indifference to that need," Natale, 318 F.3d at 582, and (iii) a causal connection between the indifference and the plaintiff's injury. Miller v. City of Phila., 174 F.3d 368, 374 n.5 (3d Cir. 1999). We have held that "[d]eliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" Natale, 318 F.3d at 582 (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)). Deliberate indifference exists where there is "objective evidence that [a] plaintiff had serious need

7

for medical care" and the need was ignored or delayed for non-medical reasons.  Id. (internal quotation marks omitted).  Smith must therefore show that Frampton knew of the risk to Kashon Smith and disregarded it and that such acts or omissions caused him injury.  See id.; Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001).  To prove supervisory liability for such a constitutional violation, Smith must show that Frampton was "involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged."  McKenna v. City of Phila., 582 F.3d 447, 460 (3d Cir. 2009).

Smith is not entitled to judgment as a matter of law.  There was sufficient evidence upon which the jury could reasonably have concluded that Frampton's own actions and those he took as a supervisor did not meet the "deliberate indifference" standard.  The testimony revealed that Frampton was attempting to control a chaotic crime scene and that he promptly called for (and cleared a path for) medical assistance, which arrived and transported Kashon Smith to a hospital within minutes of Frampton's arrival.  Further, the pathologist's testimony provided a basis on which the jury could have concluded that Frampton's failure to turn Kashon Smith onto his back or remove his handcuffs, or to order another officer to perform one of those tasks, did not contribute to Kashon Smith's death.  While his face-down position in the minutes before the ambulance arrived apparently violated CPD policy, there was no medical evidence that his position caused asphyxiation or that it in fact diminished his chances of survival.  As to the handcuffs, the paramedic conceded that the handcuffs did not actually prevent him from starting an IV,

8

and Smith's expert did not opine that prompt IV treatment would likely have led to Kashon Smith's survival. Finally, to the extent that Smith argues that Frampton should have administered first aid himself and was deliberately indifferent in not doing so, the jury could reasonably have concluded that Frampton would have been unable to competently administer first aid to a gunshot victim, as he testified he lacked the training to do so, and his prompt call for an ambulance and efforts to clear a path for its arrival demonstrated a timely response to Smith's medical need.

Accordingly, we will affirm the District Court's denial of Smith's motion for judgment as a matter of law as to Frampton. Further, this same evidence shows that the District Court did not abuse its discretion by declining to hold that "the verdict [was] contrary to the great weight of the evidence" such that "a miscarriage of justice would result if the verdict were to stand," Pryer, 251 F.3d at 453 (internal quotation marks omitted), and denying Smith's motion for a new trial.

### B.

We next address the District Court's grant of judgment as a matter of law in favor of Camden.[5] Municipal liability under § 1983 must be based on the "execution of a government's policy or custom" that actually results in a constitutional violation. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694-95 (1978). If no officer

---

[5] Although the District Court's ruling focused primarily on what it considered to be inadequate evidence surrounding Camden's handling of excessive force complaints against officers in discussing judgment as a matter of law in the city's favor, we may affirm its grant of judgment as a matter of law on any grounds supported by the record. See Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir. 2001).

committed a "violation in the first place, there can be no derivative municipal claim." Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227, 238 n.15 (3d Cir. 2013); see City of L.A. v. Heller, 475 U.S. 796, 799 (1986) ("[I]f the [officer] inflicted no constitutional injury . . . , it is inconceivable that [the city] could be liable . . . .").

Because we will not disturb the jury's verdict that Frampton is not liable for any constitutional violations, there can accordingly "be no derivative municipal claim" based on Frampton's actions. See Mulholland, 706 F.3d at 238 n.15. Further, to the extent that Smith argues that Camden is nevertheless liable under § 1983 because its unwritten policy caused a constitutional violation through officers on the scene other than Frampton, her argument is similarly unavailing, as it requires proof that a CPD officer on the scene violated Kashon Smith's constitutional rights by being deliberately indifferent to his medical needs. Here, the jury found Smith did not prove any officer violated Kashon Smith's rights and thus, Camden could not be found liable and we will not disturb the District Court's ruling in favor of Camden.

IV.

For the foregoing reasons, we will affirm the District Court's grant of judgment as a matter of law in favor of Camden and its denial of the motion for judgment as a matter of law or for a new trial with respect to Frampton.

10